786 So.2d 137 (2001)
SHORELINE GAS, INC., Plaintiff-Appellee,
v.
GRACE RESOURCES, INC., et al, Defendant-Appellant.
No. 34,517-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*139 Klotz, Simmons & Reeks, by David Klotz, Shreveport, Counsel for Defendant-Appellant, Triple S Ventures.
Mills, Turansky & Cox, by George H. Mills, Jr., Shreveport, Counsel for Defendant-Appellee, Grace Resources, Inc. & Dixie Gas.
Shuey, Smith & Reynolds, by John M. Shuey, Jr., Shreveport, Counsel for Defendant-Appellee, Tri-State Royalty Owners.
G. Warren Thornell, Shreveport, Counsel for Plaintiff-Appellee, Shoreline Gas, Inc.
M. Thomas Arceneaux, Shreveport, Co-Counsel for Plaintiff-Appellee, Shoreline Gas, Inc.
Before NORRIS, STEWART and CARAWAY, JJ.
NORRIS, Chief Judge.
Triple S Ventures, L.L.C. appeals the trial court's award of the proceeds of a concursus proceeding to Grace Resources, Inc. as well as the award of attorney fees to the stakeholder, Shoreline Gas, Inc. For the reasons expressed, we affirm.

Factual Background
On January 14, 1998, Grace Resources entered into a Gas Purchase Contract with Shoreline, wherein Shoreline agreed to purchase the natural gas production from the Tri-State Realty Company Lease in the Pine Island Field which Grace held. The agreement was to run for a one year term, from February 1, 1998 through January 31, 1999. The agreement was properly executed, and both parties began to perform their obligations.
On July 22, 1999, Mr. Douglas E. Smith, Grace's president, faxed a letter to Shoreline stating that Grace sold its interest in the gas lease to Triple S as of June 11, 1999 and that payments should be made to Triple S. In accordance with these instructions, Shoreline began paying Triple S directly for the months of June and July. Grace made no objection to this arrangement at the time.
Shoreline, however, had also entered into a new purchase agreement directly with Triple S on June 1, 1999. Shoreline subsequently sent a "Notice of Termination" of its original contract to Grace on September 13, 1999, but with an effective date of June 1, 1999. Notably, however, this "notice" requested Grace's consent. Grace immediately objected and denied permission to terminate the original gas *140 contract, revoking the July 22 assignment of payments on September 25, 1999. When both Triple S and Grace subsequently demanded payment and Shoreline could not resolve which one to pay, Shoreline filed this suit, depositing the applicable payments into the registry of the court. Triple S and Grace both filed reconventional demands seeking a declaratory judgment that their respective contracts with Shoreline were valid and enforceable.
The district court held a one-day bench trial on the merits on May 16, 2000. After a call for proposed findings of fact and conclusions of law from all parties, the court, on May 31, 2000, ultimately adopted Shoreline's submission, ruling that Grace had the right to sell the gas and was entitled to the funds deposited by Shoreline after Shoreline's award of attorney fees and trial costs were deducted. Triple S appeals. Shoreline answers the appeal, claiming that it is entitled to an increase in the attorney fee award as well as an additional award for the attorney fees related to this appeal.

Discussion
Since a contract establishes the law between the parties, the purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art.2045. Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741; Billingsley v. Bach Energy Corp., 588 So.2d 786, 790 (La.App. 2d Cir.1991). When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. Brown v. Drillers, Inc., supra. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent. La. C.C. art.2046; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 197; Billingsley, supra.
Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless there is ambiguity in the written expression of the parties' common intent. A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation. Noel v. Discus Oil Corp., 30,561 (La.App.2d Cir.5/13/98), 714 So.2d 105.
In the present case, Shoreline signed two gas purchase agreements to purchase the same gas; the original contract with Grace, and the subsequent contract with Triple S. In its first assignment of error, Triple S contends that this later contract is valid and enforceable because Grace expressly terminated the earlier contract in the July 22 letter wherein Grace notified Shoreline that it had "sold, transferred and assigned all of its interests" in the pertinent wells. We disagree, for we, like the district court, note that the July 22 letter does not purport to terminate the Grace/Shoreline agreement, but rather directs Shoreline to send its payments elsewhere.
The Grace/Shoreline agreement expressly permitted such an assignment of payments: "12. ASSIGNMENT: Either party may assign its rights, obligations or interest hereunder with prior written notice to the other party." Absent a valid, written transfer of Grace's gas lease interests to Triple S, the July 22 letter is nothing more than such an assignment. In fact, Douglas Smith, Grace's president, testified that the July 22 letter was the *141 product of a "deal in progress" between Grace and Triple S which was never ultimately consummated, but even had the deal been completed, Grace never intended to cancel its existing gas purchase contract which also extended to other wells.
Further, from the uncontroverted evidence adduced at trial it is apparent that Grace owned the rights to the "tap" or facilities agreement through which any gas had to flow to enter the pipeline. Grace produced a letter from the Department of Natural Resources Office of Conservation certifying that Grace Resources is the current operator-of-record of the wells in question as well as evidence of its ownership of the underlying mineral lease. Since gas leases are immovable property, La.Min.Code art. 18, a writing is required to transfer ownership. La.C.C. art 1839, 2440. Notably, the record is devoid of evidence of a valid, written transfer of Grace's interests to Triple S which would substantiate Triple S's position. La.C.C. art. 2440; Little v. Haik, 246 La. 121, 163 So.2d 558, 562 (La.1964). At best, as the district court reasonably concluded, the July 22 letter was simply parol evidence which cannot establish title in Triple S. Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (1954).
It is well-settled that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880; Rosell v. ESCO, 549 So.2d 840 (La.1989). In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra; Housley v. Cerise, 579 So.2d 973, 977 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the fact finder's conclusion was a reasonable one in light of the record evidence. Stobart, 617 So.2d at 882-883.
In short, we detect no manifest error in the trial court's findings that Grace was the sole owner of the gas lease, had not terminated its gas purchase contract with Shoreline, and did not transfer title in the wells to Triple S. Likewise, based on these findings, the court reasonably concluded that Triple S had no right to enter into a competing contract to sell the same gas and the Shoreline/Triple S contract was unenforceable. La. C.C. art. 2439. Since these findings are supported by the record, they cannot be in error. This assignment lacks merit.
Triple S next contends that the trial court's judgment is fatally flawed because the district court abrogated its role as fact-finder by delegating that duty to counsel when it called for proposed findings of fact and conclusions of law. We likewise disagree, for although the trial court adopted the submissions by Shoreline's counsel, all parties were given the same opportunity, and in fact did make similar submissions without offering any objection to the process. This procedure is acceptable and is not reversible error. Burkett v. Crescent City Connection Marine Division, 98-1237 (La.App.4th Cir.2/10/99), 730 So.2d 479, 484, writ denied, 99-1416 (1999), 747 So.2d 543; Lancaster v. Petroleum Corp. of Delaware, 491 So.2d 768 (La.App. 3d Cir.1986); see also, Miller v. Smith, 402 So.2d 688 (La.1981) (Lemmon, J., dissenting, note 1). Analogously, Federal courts often rely on the proposed findings of fact and conclusions of law submitted by the parties, and the United States Supreme Court has stated that where counsel has prepared the Court's reasons for judgment:

*142 Those findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence.
United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).
That the court, in its role as fact-finder, simply chose Shoreline's submission, but only, as the court's judgment states, "after careful consideration of all of the evidence and arguments of counsel," does not constitute an abdication of its duties. Moreover, since the court's ultimate findings are substantiated by record evidence, they cannot be manifestly erroneous. Stobart, supra. This assignment has no merit.

Attorney Fees
Triple S's final assignment of error contends that the district court erred when it awarded Shoreline its attorney fees. While Triple S is correct in noting that La.C.C.P. art. 4659 provides for an award of costs, and not attorney fees, the reasons for judgment specify that the attorney fees are due on the basis of a warranty contained in the Grace/Shoreline contract. Grace, however, has not appealed this judgment nor has it answered the present appeal as required by La.C.C.P. art. 2133. Accordingly, we do not address this issue, for it is not properly before us, Barr v. Smith, 25,431 (La.App.2d Cir. 1/19/94), 631 So.2d 76, 80, writ denied, 94-0689 (La.4/29/94), 637 So.2d 466, and Triple S has no standing to appeal a judgment on a contract to which it is not a party or beneficiary. In reaching this conclusion we offer no opinion as to the warranty contained in the Triple S/Shoreline contract. In addition, from this record, we find that the additional attorney fees requested by Shoreline's answer to the appeal are not warranted.

Conclusion
For the reasons expressed above, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed to Triple S.
AFFIRMED.