555 So.2d 1345 (1990)
FIRST NATIONAL BANK OF COMMERCE
v.
The CITY OF NEW ORLEANS, et al.
No. 89-CA-2426.
Supreme Court of Louisiana.
February 5, 1990.
Rehearing Denied March 8, 1990.
*1346 Galen S. Brown, M. Lizabeth Talbott, Lamothe & Hamilton, Okla Jones, II, City Atty., William D. Aaron, Chief Deputy City Atty., Dan Zimmerman, Asst. City Atty., for defendant-appellant.
Thomas C. Keller, Edward D. Wegmann, for plaintiff-appellee.
MARCUS, Justice.
The City of New Orleans in 1983 assessed an ad valorem tax against the shares of stock of First National Bank of Commerce and Bank of New Orleans and Trust Company, as well as other local banks,[1] pursuant to La.R.S. 47:1967. First National Bank of Commerce and the Bank of New Orleans and Trust Company paid the bank share tax under protest, claiming that the tax was invalid because it did not provide a deduction for tax-exempt federal securities as required by 31 U.S.C. § 742 (1976) (current version 31 U.S.C. § 3124 (1982)) and the Supremacy Clause. U.S. Const. Art. VI, cl. 2. At that time, the United States Supreme Court was considering two cases involving the issue of whether 31 U.S.C. § 742 requires a deduction for tax-exempt federal securities. American Bank & Trust Co. v. Dallas County, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983); First National Bank of Atlanta v. Bartow County Board of Tax Assessors, 470 U.S. 583, 105 S.Ct. 1516, 84 L.Ed.2d 535 (1985). In May 1983, First National Bank of Commerce and Bank of New Orleans and Trust Company entered into agreements with the City of New Orleans pursuant *1347 to La.R.S. 47:2110(C) in which the parties agreed to follow the Supreme Court's decisions in the above pending cases. Shortly thereafter, First National Bank of Commerce and Bank of New Orleans and Trust Company merged. The Supreme Court rendered a decision in American Bank in July 1983, holding that federal obligations should not be considered in computation of a state bank share tax. It then remanded Bartow County Bank to the Georgia Supreme Court for reconsideration in light of American Bank. On remand, the Georgia Supreme Court interpreted the bank share tax statute to allow a proportionate deduction of tax-exempt federal securities. It allowed a reduction of net worth by the percentage that federal securities are included in total assets. Bartow County Bank v. Bartow County Board of Tax Assessors, 251 Ga. 831, 312 S.E.2d 102 (1984). On appeal, the United States Supreme Court affirmed that judgment, holding that a proportionate deduction of federal securities is all that is constitutionally or statutorily required. First National Bank of Atlanta v. Bartow County Board of Tax Assessors, 470 U.S. 583, 105 S.Ct. 1516, 84 L.Ed.2d 535 (1985).
When the parties disagreed over the interpretation of the agreements in view of the United States Supreme Court's decisions, First National Bank of Commerce, on its own behalf, and as successor to Bank of New Orleans and Trust Company, filed suit against the City of New Orleans in the Civil District Court for the Parish of Orleans seeking specific performance of the agreements. Both parties filed motions for summary judgment. The motions were heard by a commissioner who found that the bank share tax statute, La.R.S. 47:1967,[2] was unconstitutional, as it did not allow a deduction for tax-exempt federal securities. He recommended to the judge that a judgment be rendered in favor of First National Bank of Commerce against the City of New Orleans granting the motion for summary judgment allowing the bank to recover from the city the full amount of taxes paid under protest with interest thereon at the rate of fifteen percent (15%) from the date of payment under protest until paid. The trial judge rendered a judgment ($1,421,472.50) in accordance with the recommendation of the commissioner. Because the trial court held that the statute is unconstitutional, the case was properly appealed by the City of New Orleans to this court. La. Const. art. 5, § 5(D).
An historical review will place the issue of state taxation of federal securities in perspective. The United States Supreme Court first addressed the issue in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), holding that a state tax on national banks' operations burdened the federal government and was unconstitutional under the Supremacy Clause. U.S. Const. Art. VI, cl. 2. State taxes imposed upon federal obligations also burden the federal government's ability to obtain credit by diminishing the value of federal securities and are therefore unconstitutional under the Borrowing Clause and the Supremacy Clause. Weston v. City Council of Charleston, 27 U.S. (2 Pet.) 449, 7 L.Ed. 481 (1829). Congress enacted the prohibition into law in 1862. Act of Feb. 25, 1862, ch. 33, § 2, 12 Stat. 346. This statute originally provided: "all stocks, bonds, Treasury notes, and other obligations of the United States shall be exempt from taxation by or under State or municipal or local authority." 31 U.S.C. § 742 (1952) (current version 31 U.S.C. § 3124 (1982)). Generally, the United States Supreme Court interpreted this statute to prohibit state taxation of federal obligations. Society For Savings v. Bowers, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955). However, it did establish an exception, or the "separate incidents" rule, which allowed state taxation of property such as stock, franchises, or estates though their value *1348 may be based on assets including federal obligations. The exception is based on the reasoning that the tax is not imposed upon the ownership interest in the federal securities themselves. Werner Machine Co. v. Director of Taxation, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956); Bowers, 349 U.S. at 148, 75 S.Ct. at 610. In 1959, Congress legislatively overruled this exception by amending the statute to prohibit all state taxation of federal obligations except nondiscriminatory franchise taxes, estate or inheritance taxes. 31 U.S.C. § 742 (1976).[3] In American Bank, the Court found that the statute as amended precludes direct or indirect consideration of federal obligations in the computation of state bank share taxes. 463 U.S. at 868, 103 S.Ct. at 3377. However, the Court left open the question of the type of deduction that is constitutionally or statutorily required for tax-exempt federal securities. In First National Bank of Atlanta v. Bartow County Board of Tax Assessors (on appeal after remand of Bartow County Bank to Georgia Supreme Court), the Court held that a proportionate deduction of tax-exempt federal securities is all that is statutorily or constitutionally required, affirming the Georgia Supreme Court's judgment. 470 U.S. at 596, 105 S.Ct. at 1523.
In the instant case, the main issue is the legal effect of the parties' agreements. Both parties seek to enforce the agreements, however they disagree over the interpretation of the contracts. First National Bank of Commerce contends that the banks only agreed to abide by the United States Supreme Court's initial decisions in American Bank and Bartow County Bank on the principle of law on which certiorari was granted, and not by the final disposition of the cases. The commissioner and trial court agreed with the bank's position. The city, appealing from the adverse trial court judgment, maintains that the parties agreed to abide by the final decisions of the United States Supreme Court in American Bank and Bartow County Bank.
Contracts have the effect of law between the parties and courts enforce them according to the true intent of the parties. La.Civ.Code arts. 1983, 2045; Louisiana National Leasing Corp. v. A.D.F. Serv., Inc., 377 So.2d 92 (La.1979). Courts generally determine the parties' intent by considering the language of the agreement when it is clear and leads to no absurd consequences. La.Civ.Code art. 2046; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). If the terms are clear, the court will enforce the contract as written, provided the agreement is not contrary to good morals or public policy. Roos v. Dale, 234 So.2d 489 (La.App. 3d Cir.1970). Further, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ.Code art. 2050; Lambert v. Maryland Casualty Co., 418 So.2d 553 (La.1982).
In each contract, the parties agreed to abide by the Supreme Court's decisions in American Bank and Bartow County Bank, regarding the disposition of the taxes paid under protest. The contracts specify that the issue in the above cases is "whether a state bank share tax statute which includes the value of United States government securities in the base for computing the bank share tax is constitutional under 31 U.S.C. § 742...." The First National Bank of Commerce argues that the banks only agreed to follow the Court's initial decisions on the issue on which the Court granted certiorari in the above cases. That issue was whether a state bank share tax computed on a bank's net assets without a deduction for federal securities violates 31 U.S.C. § 742 (1976) or the United States Constitution. However, the contracts also provide: "the City and [Banks] hereby agree to abide by the United States Supreme Court's decisions in American Bank and Bartow County Bank with respect to the treatment of the ... payment under protest and to dispense with the requirement that [the banks] file suit to recover *1349 the 1983 bank share tax assessment paid under protest to the City." [Emphasis in original]. The language of the agreements reflects the parties' clear intent to be bound by the complete, final decisions in the above cases. The United States Supreme Court resolved the issue specified in the parties' agreements. The Court initially held that federal securities should not be considered in the computation of a state bank share tax in American Bank, leaving open the question of the type of deduction for federal securities required by federal statutory and constitutional law. On remand of Bartow County Bank for reconsideration in accordance with American Bank, the Georgia Supreme Court construed the statute to allow a proportionate deduction of the percentage of federal securities that are included in total assets. On appeal after remand, the United States Supreme Court affirmed that judgment under the name of First National Bank of Atlanta v. Bartow County Board of Tax Assessors, holding that a proportionate deduction of federal securities is consistent with federal statutory and constitutional law. Therefore, the final disposition of the cases listed in the parties' agreements is that a state bank share tax that considers federal securities in the computation of the tax is constitutional if it provides for a proportionate deduction of federal securities. First National Bank of Commerce must abide by the final decisions of the Supreme Court in the cases specified in the agreements, and therefore is entitled to only a proportionate deduction of the federal securities. The trial court erred in holding otherwise and in allowing First National Bank of Commerce to recover the full amount of the taxes paid under protest. Having concluded that the parties' dispute could have been resolved through interpretation of the contracts, it was unnecessary for the trial court to have reached the constitutional issue.[4]
The trial court fixed interest on the refund at the rate of fifteen percent (15%) per annum under La.R.S. 33:2718.[5] The City of New Orleans contends that the applicable interest rate should be two percent (2%) per annum under La.R.S. 47:2110(A).
Generally, a statutory provision should be construed along with the remainder of the statute, and all statutes on the same subject matter should also be read together and interpreted as a whole. La.Civ.Code art. 13; Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980). The bank share tax at issue in the instant case (La.R.S. 47:1967) is an ad valorem tax. It is located in Subtitle III (Provisions Relating to Ad Valorem Taxes) in Title 47 (Revenue and Taxation) of the Revised Statutes. The only provisions authorizing a taxpayer to contest ad valorem taxes by seeking judicial review are La.R.S. 47:2110 and La.R.S. 47:1998. First National Bank of Commerce sought to recover the bank share tax paid under protest pursuant to La.R.S. 47:2110. The specific procedure employed by the bank in entering into an agreement with the city to abide by the pending decisions of the Supreme Court was authorized by subsection C of La.R.S. 47:2110. Subsection A of La.R.S. 47:2110 provides that if the taxpayer prevails, the refund shall include interest at the rate of two percent *1350 (2%) per annum from the date of the payment under protest to the date of the refund. La.R.S. 47:1998 provides for a similar rate of two percent (2%) per annum.
In contrast, La.R.S. 33:2718, fixing interest at the rate of fifteen percent (15%), is part of the statutory scheme governing sales taxes. The bank argues that because La.R.S. 33:2718 was enacted later, it repealed La.R.S. 47:2110. We do not agree. The legislature enacted the two statutes to govern two distinct types of taxation. La. R.S. 33:2718 neither expressly repealed La. R.S. 47:2110 nor did it do so by implication. Courts do not favor repeal by implication. Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1975).
Accordingly, we conclude that La.R.S. 47:2110(A) clearly applies to the ad valorem tax refund in this case, allowing interest at the rate of two percent (2%) per annum from the date of payment under protest to the date of the refund. The trial court erred in holding otherwise.
The city contends that First National Bank of Commerce should recover a refund of $268,269.78, after a recalculation of the bank share tax with a proportionate deduction for federal securities. The documents in the record do not include the figures used in the recalculation of the tax. Although the city made a proffer of additional documents, these documents do not include sufficient information for complete recalculation of the bank share tax. To determine the amount of the refund after a proportionate deduction of the percentage of federal securities that are included in total assets, and to give First National Bank of Commerce an opportunity to present its position, the case will be remanded to the district court. The refund will include interest at the rate of two percent (2%) from the date that the tax payment was received by the city to the date of the refund in accordance with La. R.S. 47:2110(A).

DECREE
For the reasons assigned, the judgment of the district court is reversed. The case is remanded to the district court for determination of the correct amount of the refund after a proportionate deduction of the percentage of federal securities that are included in the banks' total assets. The district court should fix interest on the refund at the rate of two percent (2%) per annum from the date that the City of New Orleans received the payment under protest to the date of the refund. All costs are assessed against First National Bank of Commerce.
NOTES
[1] First National Bank of Commerce states in its brief to this court that no other banks have paid the 1983 bank share tax under protest; therefore, no other banks would be entitled to refunds of the tax. In oral argument before this court, the city stated that the tax commissioner recalculated the 1983 bank share tax of all local banks to allow proportionate deductions of federal securities and made refunds to them.
[2] Subsequently in 1984, the legislature amended the bank share tax statute to allow a proportionate deduction for federal securities. La.Acts 1984, No. 107, § 1. The statute now provides: "Annual net earnings shall be adjusted to remove that portion of earnings based on United States obligations by deducting a percentage of annual net earnings based on the ratio of interest on United States obligations to total operating income." La.R.S. 47:1967(D).
[3] The current version of the statute is 31 U.S.C. § 3124 (1982). Congress made no significant changes in the pertinent part of the statute and the changes are not relevant to this case.
[4] Nonetheless, in a case in which the parties merely paid the tax under protest and filed suit to obtain a refund, we would have construed the Louisiana statute constitutionally to allow a proportionate deduction of federal securities, as did the Georgia Supreme Court. Both the Louisiana and Georgia statutes provide for a tax based on the value of the bank's assets, and both use similar methods of computing the tax. An even more flexible method of computation is used in the Louisiana statute, in that the commissioner has discretion in determining the annual net earnings figure. The statute neither expressly permits nor expressly precludes a deduction of federal securities. Further, the legislature intended to impose a tax to the extent permissible under state and federal law.
[5] La.R.S. 33:2718(A)(2) provides in pertinent part that: "Each political subdivision ... shall compute on all refunds or credits and allow interest as part of the refund or credit as follows: [f]rom the date of ... payment under protest ... interest shall be at the same rate as the political subdivision imposes upon local taxes not paid and delinquent." The City of New Orleans fixes interest for delinquent sales taxes at the rate of one and one-fourth percent per month or fifteen percent (15%) per annum. New Orleans City Code § 56-66.