**Johanna LANDRENEAU, Kevin Landreneau, William Sweeney, Anthony Bland, and Christopher T. Rau, on behalf of themselves and all others similarly situated,**

v.

**FLEET FINANCIAL GROUP and Fleet Bank (RI) National Association, a subsidiary of Fleet Financial Group, Inc., Fleet Credit Card, L.L.C.**

Nos. CIV.A.01–26–B–M1, 01–220–B–M1.

United States District Court,
M.D. Louisiana.

March 28, 2002.

Johanna R. Landreneau, Law Offices of Bert K. Robinson, Baton Rouge, LA, pro se.

Johanna R. Landreneau, Law Offices of Bert K. Robinson, Scott Hubert Fruge', deGravelles, Palmintier & Holthaus, John W. Degravelles, Baton Rouge, LA, for plaintiffs.

Michael David Ferachi, McGlinchey Stafford Lang, Anthony Joseph Rollo, Jr., Lauren L. Zimmermann, McGlinchey Stafford, PLLC, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, Alan S. Kaplinsky, Edward D. Rogers, Ballard, Sphar, Andrews & Ingersoll, LLP, Philadelphia, PA, for defendants.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on a motion for summary judgment[1] filed by the defendants, Fleet Bank (RI) National Association, FleetBoston Financial Corporation (formerly known as Fleet Financial Group, Inc.) and Fleet Credit Card Services, L.P. (successor by merger to Fleet Credit Card, L.L.C.).[2] For the reasons which follow, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

### I. Background

The plaintiffs in this action[3] are all former or present Fleet credit card holders.[4] Plaintiffs allege that the defendants are liable to plaintiffs on the following causes of action: breach of contract, breach of fiduciary duty, and intentional and deceptive practices under both the Louisiana Unfair Trade Practices Act[5] ("LUTPA") and the Truth in Lending Act[6] ("TILA"). Specifically, the plaintiffs contend that Fleet's Cardholder Agreement does not include any provision advising consumers that payments received after 9:00 AM on the due date will not be credited until the next business day and will be treated as having been received late, thus incurring a late fee charge.[7] Plaintiffs also allege that Fleet's Cardholder Agreement does not include any provisions which advise the consumers that Fleet has set weekends and holidays as due dates.[8] The Complaint also alleges that Fleet's Cardholder Agreement fails to include provisions advising the consumer that the consumer

---

1. Rec. Doc. No. 15.

2. The defendants will be collectively referred to as "Fleet" in this ruling.

3. Johanna Landreneau, Kevin Landreneau, William Sweeney, Anthony Bland, and Christopher T. Rau.

4. Plaintiffs filed this suit as a class action. Class certification is not an issue on this motion and will be decided at a later date.

5. La. R.S. 51:1401, et seq.

6. 15 U.S.C. 1601, et seq.

7. Rec. Doc. No. 1, ¶ 10.

8. Rec. Doc. No. 1, ¶ 9.

that late fees will be charged first, and if the late fee causes the balance to exceed the total credit limit, the cardholder will also be charged an "over the limit" fee.[9] Finally, plaintiffs contend the Cardholder Agreement fails to include provisions which advise the consumers that the late fees and "over the limit" fees will be charged interest and/or finance charges.[10]

In this motion for summary judgment, the defendants argue that each of the plaintiffs' claims is without merit and that the actions taken by Fleet were expressly authorized by and disclosed in the Cardholder Agreement and/or the Statement Instructions that are attached to each bill. The defendants also contend that the Statement Instructions are incorporated into the Cardholder Agreement under the Truth In Lending Act. Fleet argues that it: (1) has not breached its contract with the plaintiffs because all of the terms of the contract were fully disclosed in the Cardholder Agreement and Statement Instructions; (2) the plaintiffs are precluded from asserting claims under TILA and LUTPA; and (3) the plaintiffs do not have a cause of action for breach of fiduciary duty because a financial institution owes no fiduciary duty to a borrower other than to fulfill contractual obligations.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [11] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [12] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [13] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [14]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[15] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[16] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence

---

**9.** Rec. Doc. No. 1, ¶ 12.

**10.** Rec. Doc. No. 1, ¶ 13.

**11.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

**12.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**13.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2553).

**14.** *Little*, 37 F.3d at 1075.

**15.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**16.** *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

of contradictory facts."[17] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[18] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[19]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[20]

## B. Truth In Lending Act

As noted earlier, plaintiffs' claim that Fleet has violated the Truth in Lending Act (TILA).[21] Congress designed TILA to protect consumers from inaccurate and unfair credit practices.[22] TILA was also enacted "to promote informed borrowing by requiring lender to fully disclose to borrowers the terms of credit being extended in credit transactions."[23] This "disclosure was meant to protect consumers in lending situations from becoming unknowingly obligated to pay hidden and unreasonable charges imposed by lenders and to permit them to meaningfully compare the terms of credit extended by different lenders."[24]

The plaintiffs allege that the defendants have violated Section 1632(a) of TILA by failing to "clearly and conspicuously" disclose information regarding "annual percentage rate," and "finance charge," and the use of different terminology for the purposes of the contract. Plaintiffs also argue that Fleet's Cardholder Agreement and its monthly statements are deceptive and in violation of TILA because they mislead the cardholder as to the actual "due date" and when payments must be made to avoid late charges, finance charges, and over the limit charges.

The Court must determine the meaning of the phrase "clearly and conspicuously" as used in TILA in order to properly rule on the pending motion. The Fifth Circuit has relied on the Uniform Commercial Code's definition of "conspicuous," when defining the phrase "clearly and conspicuously." The definition in U.C.C. §§ 1–201(10)states:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals... is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color... Whether a term or clause is 'conspicuous' or not is for decision by the court.[25]

17. *Wallace*, 80 F.3d at 1047. *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

18. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

19. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

20. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

21. 15 U.S.C. § 1601, et seq.

22. *Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475 (5th Cir.1995).

23. *Nussbaum v. Mortgage Service America Co.*, 913 F.Supp. 1548, 1553 (S.D.Fla.1995).

24. *Id.*

25. *Stevenson v. TRW, Inc.*, 987 F.2d 288, 295

The Fifth Circuit in *Stevenson* further stated that the test for whether something is "clearly and conspicuously" disclosed is " 'whether attention can reasonably be expected to be called to it.' " [26]

After hearing the arguments of counsel and reviewing this voluminous record, the Court finds that there are genuine issues of material fact concerning the issue of whether or not the defendants met the "clearly and conspicuously" requirement under TILA. Specifically, the Court finds there are material issues of fact regarding the: (1) size of the print used by Fleet in its Cardholder Agreement and Statement Instructions, and (2) the location where the information was placed in the contract. Thus, summary judgment is denied on plaintiffs' claim filed pursuant to Section 1632(a) of TILA.

■ Since the plaintiffs were not adversely affected by the defendants' use of a "grace period," they have no standing to assert a claim based on this provision.[27] Thus, summary judgment in favor of the defendants should be granted on this claim.

## C. Breach of Contract

■ The plaintiffs have filed a claim based on Louisiana law for breach of contract. Plaintiffs argue that Fleet breached this contract by not defining "due date" anywhere in the Cardholder Agreement and by not informing the Cardholders that Fleet will set due dates on holidays and weekends. The plaintiffs also allege that the Cardholder Agreement fails to state that Fleet may charge late fees for payments received after 9:00 a.m. on the due

date. It is plaintiffs' contention that charging late fees on payments received after 9:00 a.m. on the due date is a breach of contract. Plaintiffs also contend that the "statement instructions" the defendants referred to are not entitled or designated as "statement instructions," and are not placed on the bill in a place such that a reasonable person's attention would be drawn to this information.

Finally, plaintiffs argue that Fleet's actions in periodically changing the terms of the contract, such as the finance charge or over the limit charge, without giving the cardholder the option of consenting or rejecting to the new terms constitutes a breach of contract.

The Court finds that there are genuine issues of material fact concerning the state law breach of contract claim. Therefore, summary judgment is not proper on this claim.

## D. Louisiana Unfair Trade Practices Act (LUTPA)

■ Plaintiffs have also asserted a claim under LUTPA.[28] Should the plaintiffs' suit become certified as a class action, they would no longer have a claim under LUTPA[29] because Section 1409(A) provides:

Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, **may bring an action individually but not in a representative capacity** to recover actual damages. (Emphasis added).

---

(5th Cir.1993)

**26.** *Id.* at 296, *citing* comment to U.C.C. §§ 1–201(10).

**27.** The plaintiffs conceded this fact during oral argument.

**28.** La. R.S. 15:1401, et seq.

**29.** Plaintiffs conceded this point during oral argument.

Both federal and state court jurisprudence confirms that private individuals may not assert class actions under LUTPA.[30] Because the plaintiffs have not been certified as a class, the Court will consider only the individual claims when deciding this motion for summary judgment.

■■■■ Louisiana provides a private cause of action for any person who suffers damages as a result of unfair or deceptive acts or practices in the conduct of any trade or commerce where the actions constitute a violation of LUTPA.[31] A trade practice is deemed unfair " 'when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors'."[32] The purpose of LUTPA is to protect consumers and business competitors only, and to deter injury to competition.[33]

The Court finds that the plaintiffs may not bring an action against the defendants LUTPA because the plaintiffs' allegations against Fleet are more analogous to a breach of contract claim rather than an unfair trade practice claim. Louisiana law suggests that LUTPA protects consumers and business competitors only, and the "real thrust" of LUTPA is to deter injury to competition.[34] Where the plaintiffs are not in competition with the defendants, it appears that most courts treat the claim as a breach of contract claim, which is not actionable under LUTPA. This Court considered a similar factual situation in *Shaw Industries, Inc. v. Brett.*[35] In *Shaw Industries,* joint venturers brought suit against a broker alleging a violation under LUTPA because the defendants acted in bad faith and/or in a manner to deceive and coerce the plaintiffs into paying exorbitant brokerage fees. Because the plaintiffs conceded they were not in competition with the defendants and considering the nature of the disagreement, this Court concluded that the suit "is more analogous to a breach of contract dispute than one involving unfair or deceptive acts."[36] This Court also held that because "the Fifth Circuit has explicitly stated that LUTPA does not provide an alternate remedy for breach of contract, . . ." summary judgment was proper on this issue.[37] For the foregoing reasons, summary judgment in favor of the defendants is appropriate on the LUTPA claim.

**E. Breach of Fiduciary Duty**

■■■■ In Louisiana, it is clear that a financial institution only owes to a borrower the duty of complying with the contract between the institution and the borrower. However, no fiduciary duty of loyalty exists between the financial institution and the borrower. "[U]nless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties."[38] Louisiana Revised Statutes 6:1124 states in pertinent part:

---

**30.** *Montegut v. Williams Communs., Inc.,* 109 F.Supp.2d 496, 498 (E.D.La.2000); *Morris v. Sears, Roebuck & Co.,*765 So.2d 419, 421 (La. App. 4th Cir.2000).

**31.** La. R.S. 51:1405, 1409.

**32.** *Shaw Industries, Inc. v. Brett,* 884 F.Supp. 1054, 1056 (M.D.La.1994) (Polozola, J.), *quoting Roustabouts, Inc. v. Hamer,* 447 So.2d 543, 548 (La.App. 1st Cir.1984).

**33.** *Schenck v. Living Centers–East, Inc.,* 917 F.Supp. 432 (E.D.La.1996).

**34.** *Id.*

**35.** *Shaw Industries,* 884 F.Supp. 1054 (M.D.La.1994)(Polozola, J.)

**36.** *Id.* at 1058.

**37.** *Id.*

**38.** *Ultra Fabricators, Inc. v. M C Bank and Trust Co.,* 724 So.2d 210, 214 (La.App. 1st

No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof.

The plaintiffs have not presented any summary judgment type evidence to establish that there was a contract between plaintiffs and Fleet wherein Fleet expressly obligated itself as a fiduciary on behalf of the cardholders/customers. Nor have the plaintiffs presented any evidence to establish that a material issue of fact exists on this claim. Therefore, summary judgment shall be granted in favor of the defendants dismissing the claim for breach of fiduciary duty.

## F. Contract of Adhesion

 Prior to holding oral argument on this motion, the Court issued an order for the parties to be prepared to discuss whether a contract of adhesion exists under the fact of this case. Neither party had raised this issue in the briefs filed in support of or in opposition to the motion for summary judgment. It is clear that the Court may decide a motion for summary judgment on a basis different from that asserted by the parties as long as the Court gives the parties proper notice and also gives them opportunity to present arguments and summary judgment type of evidence on this issue. The Court has given the parties sufficient notice and the parties were well prepared to argue this issue during oral argument.

 Louisiana law defines an adhesion contract as " 'a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection by the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to its terms.' " [39] In *Reimoneng*, the Fifth Circuit further held that "[f]actors bearing on whether an adhesion contract is unconscionable and, therefore, unenforceable include the relative sophistication and education level of the parties, the lettering size of the contract, and the clarity or ambiguity of the language in question." [40]

The Louisiana Third Circuit Court of Appeal's decision in *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*,[41] is instructive on the responsibilities of both parties when entering a contract and also when a contract is one of adhesion. Louisiana Civil Code art.1983 provides in part that "contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law." The Louisiana Third Circuit stated: "It is not within the province of the courts to relieve parties of their bad bargains." [42] The Louisiana Third Circuit also held that, " 'the law does

Cir.1997), *writ denied*, 98–2682 (La.12/18/98), 732 So.2d 1238; *see also Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F.Supp.2d 694 (E.D.La.1999).

39. *Reimoneng v. Foti*, 72 F.3d 472, 477 (5th Cir.1996) *quoting McGoldrick v. Lou Ana Foods, Inc.*, 649 So.2d 455, 460 (La.App. 3rd Cir.1994) (*quoting Golz v. Children's Bureau*

of New Orleans, Inc., 326 So.2d 865, 869 (La.1976)).

40. *Id.*

41. 2000–511 (La.App. 3rd Cir.2000), 776 So.2d 589.

42. *Id.* at 592–593 *quoting Hanover Petroleum Corp. v. Tenneco, Inc.*, 521 So.2d 1234, 1241

not compel people to read or to inform themselves of the contents of an instrument which they may choose to sign, but it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights.' " [43]

The *Sutton* court cited a lengthy portion of a law review article which gave characteristics of a contract of adhesion in great length that:

"In this kind of situation the lack of balance between the parties' positions is evident, as one of them, quite unquestionably, is in a position stronger than the other's. The party in the weaker position is left with no other choice than to adhere to the terms proposed by the other, hence, 'contract of adhesion'...." [44]

. . . . .

" ... Whether the contract is one of adhesion or one merely contained in a standard form, the enforceability of certain clauses, usually of the small print variety, may be questionable because the party now placed in a disadvantageous position by that clause was not aware that he was subscribing to it when he entered the contract. The question, thus, is whether the party gave his consent to the clause in dispute or, when it was clear that it was given, whether that consent was vitiated by error. It is in the light of answers to those questions that courts attempt to restore the fairness that is lacking in situations of that kind." [45]

The *Sutton* court further stated that " 'under the Article, a contract of adhesion must be interpreted against the party who prepared it.' " [46] The *Sutton* court cited *Golz v. Children's Bureau of New Orleans, Inc.*, wherein the Louisiana Supreme Court defined a contract of adhesion as " 'a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms.' " [47]

Because the Court finds that there are genuine issues of material fact surrounding the size print of this contract and the bargaining power of the parties, the Court is unable to decide at this time whether there was a contract of adhesion in this case.

### III. Conclusion

The Court finds that there genuine issues of material fact regarding the plaintiffs' claims under the Truth in Lending Act, 15 U.S.C. § 1632, and summary judgment is DENIED on this issue of whether the defendants "clearly and conspicuously" disclosed information required by Section 1632. Summary judgment in favor of the defendants is GRANTED on the "grace period" claims asserted under TILA.

The defendants' motion for summary judgment on the plaintiffs' breach of contract claim is DENIED.

Since the plaintiffs do not have a claim as a matter of law under the Louisiana

---

(La.App. 3rd Cir.1988), *writ denied*, 526 So.2d 800 (La.1988) (*citing Kenny v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386 (1970)).

**43.** *Id.* at 593 *quoting McGoldrick*, 649 So.2d at 460.

**44.** *Id.* at 593–594, *quoting Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of*

*the Louisiana Law of Obligations*, 47 La. L.Rev. 699, 757–59 (1987).

**45.** *Id. quoting* La. C.C. art.2056, Revision comment (c).

**46.** *Id.* at 594 *citing Golz*, 326 So.2d 865.

**47.** *Id.* at 594 *citing Golz*, at 869.

Unfair Trade Practices Act because their claims are more analogous to breach of contract, summary judgment in favor of the defendants is GRANTED as to this claim.[48]

The Court finds that the defendants owe no fiduciary duty to the plaintiffs. Therefore, summary judgment in favor of the defendants is GRANTED on this claim.

Finally, the Court finds that there are genuine issues of material fact concerning whether or not this contract is a contract of adhesion under Louisiana law. Thus, summary judgment is DENIED on this claim.

Therefore:

IT IS ORDERED that the defendants' motion for summary judgment[49] is GRANTED in part and DENIED in part.

---

48. As previously stated, if plaintiffs are certified as a class, they would be precluded from asserting a claim under LUTPA.

49. Rec. Doc. No. 15.